IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SVV TECHNOLOGY INNOVATIONS INC., | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) ) Case Nos. 6:24-cv-00536, 538, 539-ADA |
| ACER INC., | ) ) |
| *Defendant*. | ) ) ) ) |

**DEFENDANT ACER INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT THAT AN EARLIER LUMP-SUM VERDICT PRECLUDES FURTHER <u>REMEDIES FOR THE LICENSED PATENT FAMILIES</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 1

II.  REPLY ARGUMENT .............................................................................................. 2

    A.   SVV's arguments in response reveal a fundamental misunderstanding of how a lump-sum royalty operates. ............................................................. 2

    B.   There are no factual disputes that the lump-sum license enables Acer to "use the patented technology [from the four patents litigated through trial] however [Acer] would like." ................................................................... 3

    C.   There are no factual disputes that the lump-sum license applies to both patent families based on the testimony presented to the jury during trial. ............. 5

    D.   There is no dispute that Acer has fully satisfied the prior judgment. ..................... 6

    E.   SVV's remaining arguments are unavailing. ............................................................ 8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cheetah Omni LLC v. AT&T Services*,
    949 F.3d 691 (Fed. Cir. 2020) .................................................................................................. 6

*Convolve, Inc. v. Dell Inc.*,
    No. 2:08-CV-244-RSP, 2015 WL 588712 (E.D. Tex. Feb. 11, 2015) ............................. 3, 4, 6

*Diamondback Industries v. Repeat Precision*,
    No. 6:19-CV-00034-ADA, slip op. (W.D. Tex. Mar. 13, 2020) ............................................... 6

*Endo Pharmaceuticals v. Actavis Inc.*,
    746 F.3d 1371 (Fed. Cir. 2014) ................................................................................................ 6

*Ericsson Inc. v. TCL Communication Technology Holdings*,
    No. 2:15-cv-00011-RSP, 2018 WL 2149736 (E.D. Tex. May 10, 2018),
    *vacated*, 955 F.3d 1317 (Fed. Cir. 2020) ................................................................................. 4

*Fleming v. Escort, Inc.*,
    No. 1:12-CV-066-BLW, 2013 WL 3995259 (D. Idaho Aug. 5, 2013) ................................ 5, 7

*Fleming v. Escort, Inc.*,
    No. 1:12-CV-066-BLW, 2014 WL 970213 (D. Idaho Mar. 12, 2014) ..................................... 5

*General Protecht Group. v. Leviton Manufacturing Co.*,
    651 F.3d 1355 (Fed. Cir. 2011) ................................................................................................ 6

*Intel Corp. v. Negotiated Data Solutions*,
    703 F.3d 1360 (Fed. Cir. 2012) ................................................................................................ 6

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ............................................................................................ 1, 2

*Met-Coil Systems Corp. v. Korners Unlimited*,
    803 F.2d 684 (Fed. Cir. 1986) .................................................................................................. 8

*Personal Audio v. Apple, Inc.*,
    No. 9:09CV111, 2011 WL 3269330 (E.D. Tex. July 29, 2011) ........................................... 3, 4

*Prager v. El Paso National Bank*,
    417 F.2d 1111 (5th Cir. 1969) .................................................................................................. 8

*TransCore, LP v. Electronic Transaction Consultants Corp.*,
    563 F.3d 1271 (Fed. Cir. 2009) ................................................................................................ 6

*Unified Patents LLC v. Uniloc 2017 LLC*, No. IPR2019-00453, 2020 WL 4209304
  (P.T.A.B. July 22, 2020) ................................................................................................ 8

*United States v. Mansion House Center Redevelopment Co.*,
  682 F. Supp. 446 (E.D. Mo. 1988) ............................................................................. 7, 8

*Wagner Sign Serv. v. Midwest News Reel Theatres*, 119 F.2d 929,  (7th Cir.), *dismissed
  sub nom. Wagner Sign Serv., Inc. v. Midwest News Reel Theatres, Inc.*, 314 U.S. 699
  (1941).  ............................................................................................................................ 7

I.      INTRODUCTION

SVV's opposition reveals a fundamental misunderstanding of how a lump sum award operates.  A lump sum award caps the liability of the licensee and gives it "the ability, usually for the remainder of the patent term, to actually use the patented technology in its own products without any further expenditure."  *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009) (internal quotation omitted).  SVV also appears to have seller's remorse for empowering the jury to award a lump sum verdict at the last trial.  But SVV's misunderstanding and remorse cannot create a genuine dispute of material fact.

SVV neither disputes nor addresses that its damages expert, Dr. Farber, told the jury that, with a lump-sum royalty, "the licensee [i.e., Acer] just pays a one-time payment and gets a license through the life of the patents.  They ***get freedom to use the patented technology however they would like*** . . . ."  Ex. D,[1] 374:24-375:6 (emphasis added).  Dr. Ugone likewise testified that a lump-sum royalty would give Acer "freedom to operate going forward."  Ex. E, 834:23-835:14.  And SVV's experts valued the patented technology in terms of entire patent families, not individual patents, extending the scope of the license beyond the four expressly tried.  *See* Opp., 8-10.  During closing, SVV told the jury that a lump-sum verdict would "resolve[] future problems . . . [and] settle it once and for all today."  Ex. F, 976:19-977:4.  And the jury was instructed that "[w]hen a lump sum is paid, the infringer pays a single price for a license covering both past and ***future infringing sales***."  *Id.*, 949:17-25 (emphasis added).  Afterwards, the jury awarded SVV "a one-time . . . lump sum for past and future sales."  Ex. B, 8.  The Court should hold SVV to what it told the jury and thus grant summary judgment that Acer has an implied license to the '007 and '791 families by way of the verdict.

---

[1] Acer's Motion for Summary Judgment is cited as "Mot." and the related exhibits are cited in the same manner as they were originally cited in Acer's Motion (e.g., Ex. A).

## II.   REPLY ARGUMENT

### A.   SVV's arguments in response reveal a fundamental misunderstanding of how a lump-sum royalty operates.

SVV asked the jury for a lump-sum verdict, stating that "I think it should be a lump sum." Ex. F, 976:24-977:2.  Nevertheless, citing equity considerations, SVV complains that the lump-sum license it obtained would cover "an unlimited number of products." Opp., 12-13.  But this is how a lump-sum royalty operates.  Acer paid a lump-sum royalty to "cap[] its liability" and "giv[e] it the ability, usually for the remainder of the patent term, to actually use the patented technology in its own products without any further expenditure." *Lucent Techs.*, 580 F.3d at 1326 (citation omitted).

This structure is not without "risks for both parties." *Id.*  For SVV, "[t]he licensed technology may be wildly successful, and the licensee may have acquired the technology for far less than what later proved to be its economic value." *Id.*  This is effectively what SVV contends happened here.  Acer, however, likewise accepted a commensurate amount of risk because it "may have paid a lump-sum far in excess of what the patented invention is later shown to be worth in the marketplace" (*id.*), i.e., Acer may not use it for the next decade.  *Id.*  If that proved true, Acer "cannot later ask for a refund from the licensor based on a subsequent decision not to use the patented technology.  There is no provision for buyer's remorse." *Id.*

SVV acknowledges (and argues) that Acer's "product lifecycle entails deprecating old products and introducing new ones." Opp., 1.  This was clear during trial.  *See* Ex. D, 546:23-547:4 (noting Acer has "hundreds of models" and describing "end of life" as "three years").  And it would have also been clear during discovery.  If SVV had concerns regarding whether Dr. Farber's damages model was appropriate for Acer's product development strategy, then it should have sought a running royalty rather than a lump sum, as a running royalty would reach

all future products on a per-unit basis.[2] *Id.*, 375:7-16 (describing "a running royalty structure").

SVV also contends that the implied license should be limited to the accused products because Dr. Farber "explained that his damages for *future use* calculations were based on *projections based on past use* involving the 42 Accused Products." Opp., 7.  And indeed, during trial, Dr. Farber explained that "if we were to do a lump sum, you would need to project unit sales and royalties from now through the last patent to expire." Ex. D, 389:4-6.  But given that Acer's products have only a limited lifespan, projection of product sales would necessarily include non-accused products.  Indeed, SVV points to no evidence that Acer's products sell for ten years (i.e., 2022-2032), as Dr. Farber's model assumes.  Instead, as SVV notes, Acer continually innovates, introducing new product models and deprecating old ones.

### B.     There are no factual disputes that the lump-sum license enables Acer to "use the patented technology [from the four patents litigated through trial] however [Acer] would like."

The implied license inquiry requires a "fact-intensive analysis of the facts presented at trial and the language contained in the jury instructions and verdict." *Convolve, Inc. v. Dell Inc.*, No. 2:08-CV-244-RSP, 2015 WL 588712, at *2 (E.D. Tex. Feb. 11, 2015); *see also Pers. Audio v. Apple, Inc.*, No. 9:09CV111, 2011 WL 3269330, at *7-8 (E.D. Tex. July 29, 2011).  And here, as detailed in Acer's opening brief, the record warrants a single conclusion: Acer has a license to all past and future products for at least the four patents litigated through trial.

Both damages experts were unequivocal regarding the impact of a lump-sum royalty. Dr. Farber explained that "***[Acer] get[s] freedom to use the patented technology however they would like*** . . . ." Ex. D, 374:24-375:6 (emphasis added).  Dr. Ugone testified similarly,

---

[2] SVV initially sought a running royalty, but it switched gears mid-trial to request a lump-sum royalty because of a perceived notion that the return would be greater. *E.g.*, Ex. F, 976:19-977:4 ("I think it should be a lump sum . . . ."); *see also* Ex. C, 375:17-23 (Dr. Farber testified that "I think they would have agreed to a running royalty structure.").

3

explaining that with a lump sum, "you have a freedom to operate going forward. ***You can make the products you want to make***." Ex. E, 834:23-835:14 (emphasis added). SVV incorrectly argues this statement is limited to the specific accused products. But as Dr. Ugone explained, "with a lump sum, . . . ***now I can make whatever product I want, or change my products***, and not have to worry about these types of disputes." *Id.*, 842:22-843:1 (emphasis added).

SVV contends that *Personal Audio* "involved an unusually clear record where trial evidence and instructions demonstrated that the jury intended a broad, freedom-to-use license." Opp., 6. But this case involves the same expert, Dr. Ugone, providing nearly identical testimony. *See* Mot., 7 (citing *Pers. Audio*, 2011 WL 3269330, at *8). And here, unlike *Personal Audio*, SVV's own expert provided a similar explanation, eliminating any doubt about the messaging conveyed to the jury.[3]

SVV's cited cases do not undermine the import of the facts in this case. In *Convolve*, the court rejected defendant's argument "that an award in a patent case regarding a narrow set of accused devices results in a blanket license that extends to *all* products made by a company, ***regardless of the facts of the case***." 2015 WL 588712, at *2 (second emphasis added). But this is not Acer's argument. Here, ***the facts warrant*** such license. And none of the other cited cases considered the broad freedom-to-operate testimony provided by both experts to the jury. *See* Opp., 5-6 (citing *Ericsson Inc. v. TCL Commc'n Tech. Holdings*, No. 2:15-cv-00011-RSP, 2018 WL 2149736, at *16 (E.D. Tex. May 10, 2018), *vacated*, 955 F.3d 1317 (Fed. Cir. 2020); *Fleming v. Escort, Inc.*, No. 1:12-CV-066-BLW, 2013 WL 3995259, at *4 (D. Idaho Aug. 5,

---

[3] SVV contends, repeatedly, that the focus of the trial was on particular accused products and particular quantities of products. Opp., 4, 6-8. But this is true for every trial, and at no point did either party (or any witness) expressly limit the scope of a lump-sum royalty in the manner alleged by SVV. Indeed, as discussed above, the parties unequivocally broadened the scope.

4

2013); *Fleming v. Escort, Inc.*, No. 1:12-CV-066-BLW, 2014 WL 970213, at *2 (D. Idaho Mar. 12, 2014)).

      **C.**    **There are no factual disputes that the lump-sum license applies to both patent families based on the testimony presented to the jury during trial.**

SVV contends that "[t]he Federal Circuit has consistently refused to extend implied licenses across entire patent families ***without reason***." Opp., 11 (emphasis added). But Acer provided that reasoning. Indeed, SVV's opposition provides no substantive response to Acer's argument that (1) SVV's trial experts presented (and valued) the patented technology as coextensive with their patent families (Mot., 8-9); (2) SVV's trial expert presented to the jury a lump-sum amount that was based on a royalty rate that accounted for the value of both patent families—not individual patents (*id.*, 9-10); and (3) SVV's trial expert testified to the jury about SVV's historical practice of licensing patent families using lump sums (*id.*, 10-11).[4]

    SVV contends that "the jury . . . was not made aware of any connection between any of SVV's other patents and how they could relate to Acer's products." Opp., 12. But this is incorrect. SVV's technical expert, Mr. Thomas Credelle, told the jury that the '135, '397, and '191 patents are "a group of patents that . . . kind of stem from an initial idea that has a patent number ending in '007." Ex. C, 180:5-23. The '007 patent was not even at issue in the 2022 cases; rather, SVV's experts valued the family as a whole. *See* Mot., 4 (listing patents). And with respect to the '205 patent, Mr. Credelle explained that "[t]his is called the '791 family, the '205 patent. So it stems from an earlier invention, the '791 [patent]." Ex. C, 185:8-11. Similarly, the '791 patent was not at issue there. Dr. Farber likewise testified that "[t]here are four patents-in-suit here across two patent families, the '007 patent family and the '791 patent

---

[4] SVV's contends that "Acer's Motion variously oscillates between trial testimony and snippets of Dr. Farber's expert report." Opp., 12. Although Acer cited Dr. Farber's expert report, it was only to confirm the consistency with the cited trial testimony. Mot., 8, 11 (citations omitted).

5

family." Ex. D, 331:16-21.  The value of the technology was not ascribed to individual patents—it was ascribed to patent families.  Ex. C, 268:15-270:16; Ex. D, 358:12-19.

SVV's cited cases do not undermine the only reasonable conclusion from the facts of this case, and notably, none of the cases address an implied lump-sum license stemming from a jury verdict.  Opp., 11-12.  The cases are instead each directed to whether the scope of a negotiated license agreement extends to patents other than those expressly identified in the agreement.[5]  *See TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1279 (Fed. Cir. 2009); *Gen. Protecht Grp. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011); *Intel Corp. v. Negotiated Data Sols.*, 703 F.3d 1360, 1367 (Fed. Cir. 2012); *Endo Pharms. v. Actavis Inc.*, 746 F.3d 1371, 1377-78 (Fed. Cir. 2014); *Cheetah Omni LLC v. AT&T Servs.*, 949 F.3d 691, 695-96 (Fed. Cir. 2020); *Diamondback Indus. v. Repeat Precision*, No. 6:19-CV-00034-ADA, slip op. at 81 (W.D. Tex. Mar. 13, 2020).  But whether a license agreement extends to patents not expressly identified in an agreement is not at issue here.

### D. There is no dispute that Acer has fully satisfied the prior judgment.

Following trial for the patent families asserted in 2022, Acer submitted a cash deposit into the Court's registry and posted a supersedeas bond, covering compensatory damages, pre-judgment interest, costs, and post-judgment interest.  -640 Suit, Dkts. 199, 200, 201.  Acer has thus fully satisfied the prior judgment.

SVV contends that an implied license cannot exist because "SVV has never received any of the damages awarded." Opp., 3.  But SVV fails to cite any precedent requiring ***actual receipt*** of the damages award.  If SVV's argument was accepted, SVV could simply refile the identical

---

[5] SVV repeatedly focuses on the "express terms of the agreement." Opp., 12.  But here, there was no actual agreement—the implied license stems from "the facts presented at trial and the language contained in the jury instructions and verdict." *Convolve*, 2015 WL 588712, at *2.

6

case from 2022 during the pendency of any appeal—a nonsensical result.

Instead, satisfying the judgment by guaranteeing the funds (i.e., through a bond or other escrow mechanism) is sufficient. *See Fleming*, 2013 WL 3995259, at *4 ("Escort has paid that sum into an escrow account as requested by Fleming until all appeals are completed. In essence, Escort has a paid-up license."). Acer's posting of "[a] supersedeas bond essentially serves as a guarantee … that [it] will satisfy the judgment plus interest and costs if it is affirmed on appeal." *United States v. Mansion House Ctr. Redevelopment Co.*, 682 F. Supp. 446, 449 n.5 (E.D. Mo. 1988). For this reason, courts have found that a "supersedeas bond which assures the payment of all profits and damages" was equivalent to actual compensation. *Wagner Sign Serv. v. Midwest News Reel Theatres*, 119 F.2d 929, 930 (7th Cir.), *dismissed sub nom. Wagner Sign Serv., Inc. v. Midwest News Reel Theatres, Inc.*, 314 U.S. 699 (1941).

SVV attempts to distinguish *Fleming*, arguing that *Fleming*'s "escrow arrangement was part of the record and guaranteed that the patentee had an enforceable mechanism to obtain funds." Opp., 4. But this is exactly the role of a cash deposit and supersedeas bond in the -640 Suit. Indeed, in the Court's order granting Acer's motion for approval of a supersedeas bond and to permit a cash deposit, the Court detailed an enforceable mechanism (agreed to by SVV) to obtain the funds:

> If either (a) an appeal is timely filed by Acer, and (i) the appeal is finally dismissed or (ii) the Judgment is affirmed, in whole or in part, after the conclusion of said appeal, or (b) the time for Acer to timely file an appeal expires without Acer having filed an appeal, then SVV may file and serve a noticed motion seeking to recover the Bond Deposit. In such event, SVV shall be entitled to recover the full amount of the Judgment ($12,048,570) . . . plus post-judgment interest . . . .

-640 Suit, Dkt. 200 ¶ 5. And these appreciating funds also protect SVV's judgment in the event of a stay (and any related delay). The cash deposit and bond serve as "a guarantee that the appellee can recover from the appellant the damages caused by the delay incident to the appeal,

7

that is[,] the bond guarantees that the appellee can recover the interest that accrues on the judgment during the appeal." *Mansion House*, 682 F. Supp. at 449 n.5.

SVV contends Acer is "attacking the patents at the Patent Office and has filed myriad papers challenging the verdict, all in hopes of avoiding payment obligations to SVV." Opp., 3. But Acer's cash deposit and bond ensure Acer can meet its payment obligations, irrespective of what may happen in the future.[6] SVV's contention is also incorrect. Acer challenged one patent at the Patent Office, and as SVV already informed the Court, a reexamination certificate issued. -640 Suit, Dkt. 208. This cannot be appealed by Acer, ending the challenge.[7]

### E. SVV's remaining arguments are unavailing.

SVV also contends that "Acer did not include a statement of material facts with its Motion." Opp., 13. Notably, SVV does not argue that Acer's briefing was not compliant with the local rules. Such a statement was not required, nor does SVV identify any genuine dispute of material fact. What was presented to the jury cannot reasonably be disputed. Because "the existence of an implied license[] is a question of law," the issue is squarely one for this Court to decide on Acer's Motion for Summary Judgment. *Met-Coil Sys. Corp. v. Korners Unltd.*, 803 F.2d 684, 687 (Fed. Cir. 1986). As a legal matter, Acer is licensed to these patent families by virtue of the jury's verdict in the 2022 trial and Acer's satisfaction of the judgment via a cash deposit and supersedeas bond.

---

[6] The content of Acer's post-trial motions (and, if necessary, appeal) is not relevant to the present motion. The Fifth Circuit has held that "[t]he fact that the judgment is now on appeal . . . (where it remains undecided) has no effect on its absolute effect as a bar." *Prager v. El Paso Nat'l Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969). That said, if judgment in the first case is reversed as to liability, then SVV would be able to continue with the current suit. *See id.*

[7] SVV contends that Acer is using third parties, "such as Unified Patents," to challenge SVV's patents. Opp., 13. But Unified Patents operates in the public interest—not at the direction of Acer (or any other member). *See, e.g., Unified Patents LLC v. Uniloc 2017 LLC*, No. IPR2019-00453, 2020 WL 4209304, at *25 (P.T.A.B. July 22, 2020) .

Dated: October 15, 2025                         Respectfully submitted,

  /s/ Eric H. Findlay
Eric H. Findlay
State Bar No. 00789886
Findlay Craft, P.C.
7270 Crosswater Avenue
Suite B
Tyler, TX 75703
Tel: (903) 534-1100
Fax: (903) 534-1137

Jacob A. Schroeder (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
jacob.schroeder@finnegan.com
Tel: (650) 849-6600
Fax: (650) 849-6666

Benjamin A. Saidman (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
271 17th Street, NW, Suite 1400
Atlanta, GA 30363-6209
benjamin.saidman@finnegan.com
Tel: (404) 653-6510
Fax: (404) 653-6444

Milan F. Feliciello (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
milan.feliciello@finnegan.com
Tel: (202) 408-4000
Fax: (202) 408-4400

Craig Kaufman (*pro hac vice*)
TECHKNOWLEDGE LAW GROUP LLP
20660 Stevens Creek Blvd., Suite 381
Cupertino, CA 95014
ckaufman@tklg-llp.com
Tel: (650) 517-5200
Fax: (650) 562-8054

*Attorneys for Defendant Acer, Inc.*

## **CERTIFICATE OF SERVICE**

  I certify that on October 15, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system pursuant to Local Rule CV-5(c), which will send a notification of such filing (NEF) to all counsel of record.

              */s/ Eric H. Findlay*
              Eric H. Findlay